David Yosses, on behalf of the Ad Hoc Shrimp Trade Action Committee. This case involves a crucial but relatively narrow legal question in the anti-dumping law. And the question is this, when commerce calculates a margin of dumping and calculates an export price, and it calculates that export price based on the price to a U.S. customer that includes as a term of sale, does commerce have to adjust that price in order to account for this obligation in exactly the same way as the statute requires it to account for the cost of freight and the cost of any other expense or obligation that the the questionnaire responses of the foreign exporters. Is that in the record? Yes, all the contracts are delivered, duty paid, is in the record, and it is conceded by the other side. The record is, I'm looking here at the questionnaire responses, it's cited in our page 52, in the case of U.S. sales, all sales were made on the delivered duty paid basis. I was just caught because when you said they must pay the export duties. They must pay the anti-dumping duties that are, so basically they must pay, the foreign seller undertakes as an obligation to pay any expenses to get the goods to the U.S. customer, and that includes the payment of the anti-dumping duty. And so the question is, does commerce have to adjust for that? Because what commerce is doing in an anti-dumping calculation is it's comparing normal value to export price at the same point in the chain of commerce, and what price to an ex-factory price. So you agree, I suppose, under Wheatland, our decision in Wheatland, that anti-dumping duties are not import duties within the meaning of this provision, right? That's correct. The statute says to deduct any cost, charges, or expenses and United States import duties. So why, how can costs include anti-dumping duties when Congress separately addressed import duties? That would suggest that import duties are not part of cost, doesn't it? It suggests that, well, I guess one of the questions is, if in fact our interpretation is correct, then import duties would also be costs, and so why does the statute have them there separately? And if it has those there separately, why not also any dumping duties separately? I understand your question. And I think the answer to that is, first of all, I don't know why the statute was drafted the way it was. But I believe that the expression United States import duties is there for clarity, that if it is in fact a cost, depending on the way that... But it doesn't say costs including import duties. It lists import duties separately. It includes it separately. But it does make sense that they would be deducted as if in fact they are a cost. If they are not, there are many provisions in the anti-dumping law that are written within the context of original investigations. It seems to me you've got a problem here, because while the statute, as I think you're suggesting, may not be clear, you know, there's a Chevron issue here if the statute is unclear, right? Well, if the statute is not directly addressed, the issue at hand, then there would be an issue of Chevron deference. I believe here... So why, if the statute is ambiguous, why don't we defer to Congress's interpretation? For two reasons. One is, in this case, it is the respondents themselves who say there's no difference between the anti-dumping duties and any other costs that they incur. And we've cited a number of places on the record where they state that, just as an example, the appendix page 91, the payment of the anti-dumping duty is as necessary and fundamental to the sale of the frozen shrimp in the United States as ocean freight or regular customs. But they don't say it's a cost within the meaning of the statute. But it's something that they have to pay. Well, that doesn't necessarily make it a cost. Their view is that costs don't include anti-dumping duties. So the question is, why is that not entitled to Chevron deference? And I think the term cost includes something that you're required to pay. And if they are, they admit that they are required to pay this, and so it would seem obvious to be a cost. Maybe that would be true if costs appeared alone, but there's also this import duties thing, which suggests that cost doesn't include import duties. So we've at least got an ambiguity there. And if there is an ambiguity there, I would suggest that we then fall back on, is it a reasonable interpretation of the that you take, then the goal of this provision of the statute, I believe all parties agree, is to ensure that you have an apples-to-apples comparison. That you are in fact comparing what the X factory priced on both sides. And in page five of our reply brief, we have some numerical examples which we submitted to the department, which we submitted to the court below, which is in our initial brief, and we've summarized it in the table there. And if you look at that table, if you use commerce's methodology. Isn't your point basically that it's not a reasonable interpretation of the statute, because it distinguishes between two situations which ought to be treated the same, in your view. In other words, that the payment by the foreign importer to commerce of the anti-dumping duties, or whoever gets the customs, should be treated the same as the payment to the U.S. importer, right? It should be treated as, it should be treated the same as, for example, the freight charge that they are required to pay. I thought you were making the claim that anti-dumping duties are treated in two different ways, depending on whether the foreign entity pays them directly or reimburses the U.S. importer. Yes. Right? And that seems to me your basic argument as to why the commerce's position here is arbitrary, that those two situations ought not to be treated differently, right? I think there are two reasons. One is because you don't actually get to the ex-factory price, as the example shows on page five. I think you also have the situation where, if you had exactly the same price, let's say you have a price here that's delivered duty paid in the United States, you had exactly the same price on a cost and freight basis. And so your argument, to make sure I understand, you're not drawing a distinction then between whether the exporter pays the dumping duty or some third-party importer. Correct. I guess the point that I would make, I'm making several points, I guess, and I just want to make sure that they're distinct. The first point is that the position of the Commerce Department, as I understand it, is as long as someone pays the any dumping duty, we don't really care who it is. We agree with that. The question is, has the any dumping duty been calculated correctly in the first place? And in order to calculate the any dumping duty, you have to subtract from the price to the U.S. customer everything that is not payment for the merchandise in order to the X factory price. And if the exporter is paying the any dumping duty and you don't take that into consideration, you're not getting to the X factory price. And that's what our numeric examples show. What Commerce says is, well yes, but any dumping duties are different. And this gets to the point that Judge Dyck is, I believe, raising. If any dumping duties are never to be taken into account, we have this anomalous situation of reimbursement. So let's say you're calculating, what Commerce does is it calculates an any dumping duty based on a price to the U.S. customer of $100. And whether it's cost in freight or whether it's duty, in which case, if it's cost in freight, the buyer pays the duty, is the importer of record and pays the duty. If it's delivered duty paid, the seller is the importer of record and pays the duty. Commerce says we treat those exactly the same way. We don't care. I think you're making this too complicated. I mean, isn't my question right, that you say that Commerce acts reasonably if it doesn't treat the payment to Commerce of the any dumping duty the same way that it treats the reimbursement of the U.S. importer of the any dumping duty? Right. And they say, no, no, you're wrong. That's going to increase the price, whereas when they pay to Commerce directly, that's going to increase the price, right? Well, I guess what I'm saying is, if they sell at $100 under either scenario. You want to make this complicated. I'm sorry. I'm trying to be clear. And I think, and I'm sorry that it's complicated, but it's, I think, necessary to understand why their point is incorrect. If you're If you say the buyer pays the any dumping duty, so the buyer is now really paying, let's say, $104, because they're paying $100 for the merchandise and $4 in any dumping duty, and that's the fair price under the statute. And then the exporter says, you know what? As a separate transaction, we're going to give you back that $4. So you really only have to pay $100, and we'll pick it up. Commerce says, that's reimbursement. We're going to make that deduction. But here, it's just built into the price. It's exactly the same thing. If they say, we're going to do a delivered duty paid at $100, and we'll pay that $4 ourselves, we won't go through making you pay it and then reimbursing you. We'll just pay it ourselves. Commerce says, no reimbursement. You can't reimburse yourself. But economically, those are identical. And you're right, Judge Dyke. That's exactly the point, is that these are economically identical transactions. I didn't say they were identical. Well, no. But that's our argument. That's our argument. These are identical transactions. Commerce treats them differently. And there's no express rationale why one situation is treated differently from the other. And I think that... I will hear from the government. I think the government does believe that they have a rationale for treating them differently. I come at this a little differently. Let me ask you this. You're trying to say that an anti-dumping duty is a cost incident to bringing the merchandise into the country? Yes. And the sort of things that we... that's an incident to bringing it in. It struck me that an anti-dumping duty is incident to means results from. I think that the anti-dumping duty is incident to a pricing decision that the exporter made. The exporter decided that I'm going to put this price in what the American buying goods has to pay. That's a... you didn't have to do that. In order to bring the goods from, say, China to the United States, you don't have to make that decision, the pricing decision, right? So you don't have... And the exporter could eat the duty himself if he wanted to. Well, I guess the question is... I'm just trying to get at the plain meaning of a cost incident to, because the way I looked at it was an anti-dumping duty is not incident to bringing the goods to the United States. It's incident to a decision that an exporter made to pass on the duty. Well, the idea is that... And on that interpretation, then your anti-dumping duty would never be a cost incident to, in potential. Well, I guess the question is, well, what about freight, which is sort of the classic cost that is incident to, and it's incident to... Freight is incident to bringing something from one place to the next, that in each instance that you're going to bring the goods from China to the United States, there's going to be freight. But there doesn't necessarily need to be, in the prices charged to the United States, the pump-up for the anti-dumping duty. Right, and... Voluntary choice that doesn't depend on... To me, it doesn't look like it's incident to importation. Well, it becomes... Compared to things like the transportation cost. And I think it becomes incident to importation when it's a term of sale. When, as a term of sale, the responsibility for paying that duty is placed on the seller. Okay, so is there ambiguity... Have I created some ambiguity? In the statute? Yeah, by saying, when you look at anti-dumping duty, is that a cost that's incident to importation? You say, well, it is when... It is when, yeah, it is when it is included in the price that you're using to calculate export prices, included in the price to the unaffiliated... For example, if it was extracted from the importer on the side, not as part of the price, it wouldn't be incident to... Absolutely, that's correct. Because it's not... Not because it's not a cost, but because it's not included in the price that is being used to calculate the export price. You're looking at the price to the U.S. buyer and saying, okay, now what's the ex-factory price that is the equivalent of that? I've got to subtract out things like freight. So the practice of commerce that you're objecting to here is long-standing, I believe. It is a long-standing practice. And it's a long-standing practice that gets itself into the world through notice-and-comment rulemaking in connection with the decision to create the export price. This is not a notice-and-comment rulemaking like rulemaking, it's for the Chevron deference that's accorded to them because they have used notice-and- comment as they did in the preceding case in connection with an actual importation. I would say that the notice-and-comment is in this case itself. Right, as it was in the leading precedent that Judge Dike referred to when we began the argument. Yes, although in that case... My question is, even if Chevron deference isn't to be accorded, why wouldn't Skidmore deference be appropriate here? Because it is a case-by-case determination that commerce makes that says, what is, in fact, a cost that we need to deduct for this sale? The agency has, say, a 30-year practice of saying, when we're concocting or getting our export price, we don't exclude anti-dumping duties. And they've done that in a whole series of proceedings just like this one. Why wouldn't Skidmore deference be appropriate to the agency's practice? Well, I think even there, even under Skidmore deference, you are... It still has to be a reasonable interpretation of the statute. We haven't heard yet from the government why it is that they don't exclude anti-dumping duties, but we know it's because they believe it multiplies the anti-dumping duties. Let's hear from the government. I think we've exhausted this line for the moment. We'll save you rebuttal time. All right, thank you very much. Thank you. Mr. Kerland? Good morning, Your Honors. Proceed. May it please the Court. I want to be clear right up front that at the time the Department of Commerce performed this calculation that is at issue, this Section 1677AC calculation of the export price, the anti-dumping duties, the final assessed anti-dumping duties that Ad Hoc Trim wants Commerce to deduct from the export price do not exist. The Court below, in this case, the Apex case, at page 8 of the decision, talked about a two-step process by which Commerce performs its calculations in an anti-dumping duty procedure. Ad Hoc's position is that Commerce should perform both steps of the calculation, come to effectively a final number for the dumping margin, treat that final number as a provisional final dumping margin, and then go back to the beginning of the calculations and start over again by sticking that number back into the calculation of export price and going through it again. And so to address Your Honor's question when one talks about whether this is a cost, charge, or expense, or a United States import duty that is incident to the importation of subject merchandise, I don't think we need to get quite as far as Your Honor was getting. It's not a cost that exists at the time of the calculation, and in that sense cannot be incident to the importation of subject merchandise. It is what is being calculated in the anti-dumping duty regime. It's also important to note the infinite recursive nature of the calculation that Ad Hoc Shrimp is advocating. And I don't want to get too far into the weeds on this, but to be clear, if the anti-dumping duty is being calculated are a cost, and they start out at $5, and then one has to engage in this recursive calculation where by plugging that $5 number back into the calculation and doubling it to $10. At that point, then, the anti-dumping duties are $10. And if the $5 anti-dumping duties are a cost, so are the $10 anti-dumping duties. And so you'd have to plug it back in again, and you'd end up with $20, and $40, and $80. There is no mathematical or legal reason why it would be appropriate to stop. As you make these arguments, they're really only asking for the first cycle of this recalculation, as well as I can tell from their argument. That's true, Your Honor. That's their position. And it is totally arbitrary and has no basis in math or law. And look, Ad Hoc is the party. The initial transaction, it isn't that arbitrary. It's what is the export price and the import price. And you just do this recalculation, as you mentioned. That's correct. But Ad Hoc here is the party that's taking a hyper-literalist construction of the statute. And so there is no basis to stop, merely because it makes Ad Hoc's position sound more reasonable if they argue that you could stop at one. Because at the end of the day, if the anti-dumping duties are a cost, and the anti-dumping's balloon from $5 to $10, that $10 is a cost. Those are now the anti-dumping duties. They're $10. And that's no less a cost under Ad Hoc's interpretation of the statute than the $5 would be. I think, again, you're embellishing on what they're arguing. They're asking for that first recalculation. Well, Your Honor, I would respectfully disagree. Ad Hoc attempts to make its position more reasonable by saying that commerce could But there's no basis in math or law for stopping at that point. And there's no basis for not stopping, either. Well, yes, there is. Because the outcome is that you end up with zero. Well, and that's the— Ridiculous. And they're not asking for a ridiculous procedure. Well, that is the absurd, ridiculous consequence of what Ad Hoc is advocating. And it's precisely what the court below recognized at page—I believe it's page 7 of the opinion below, where the court said that it was—that the calculation that Ad Hoc was advocating would be an infinitely recursive and circular calculation. And it was appropriate for commerce to avoid—I'm sorry, interpret the statute to avoid this absurd result. And it's a matter of math and definition. If anti-dumping duties are a cost and the anti-dumping duties balloon from, again, $5 to $10, then that $10 in anti-dumping duties is no less a cost than the $5 was. And so you would have to engage in that infinite recursive calculation. Could you help me by addressing the question of why it is reasonable to treat the reimbursement of the U.S. importer differently than the direct payment of the anti-dumping duty? Yeah. Maybe your circularity argument is part of that, but tell me apart from the circularity argument why that's right. Yes, I think that's a slightly different issue, and we are prepared to address that, Your Honor. So let me jump into the meat of it a little bit, and then I'll get back to some of the broader points about the reimbursement regulation. The problem with Ad Hoc's argument is it's really not the same thing. In a sense, they're impaled on the horns of a dilemma. Because the idea of reimbursement is that—which, by the way, everyone agrees that this is not a situation that falls under the reimbursement regulation. It didn't—reimbursement did not occur here. So it's not covered by that. And it's not a situation that's intended to cover. But the idea in the reimbursement situation is that someone is paying the importer back the $4 of duties. So let's say the importer was going to pay $100 plus $4 in anti-dumping duties. Someone, maybe the exporter, is now saying, I'm reimbursing that to you, so you don't have to pay the duties. Here, a fundamental premise of Ad Hoc's argument, because of the statutory language, is that the duties are being passed along in some shape or another to the export price. The statute refers to costs, charges, or other expenses that are included in the export price. And therefore, in order to be—in order to ensure that its claim arguably falls under the statute, Ad Hoc keeps arguing that the duties here are being passed along, are included in the export price. So in a sense, it's precisely not what's going on in the reimbursement situation. Because in the reimbursement situation, you're concerned about the idea of someone having to pay the duties, but then having the duties paid for them. Some of the broader points I referred to earlier, these are points that— What's the rationale for treating the reimbursement as it is in the regulation? Well, that's precisely where I was going, Your Honor. And this was discussed— Is there an evil that was being aimed at, being cured by the regulation? Yes. We had to use words like evil, Your Honor. Right. This is at 13—pages 1375 and 1376 of the Ad Hoc-Shrimp decision, the other decision that was originally on appeal as a companion to this one, and then was ultimately dismissed, where the court discussed the reimbursement regulation in some detail. And the point is, the reimbursement regulation has to do with a specific policy incentive where commerce is seeking to disincentivize precisely that type of behavior, the reimbursement of duties. Why are they trying to disincentivize? Because it creates a problem. Because it's effectively a reduction in the price, right? Well, it's a reduction in the price. I don't think that's quite how commerce looks at it. Commerce would say that it is attempting to undermine the imposition of the anti-dumping duties because they're imposing them on— Given the cost, commerce is always going to be confusing. But the question is, just make it simple. It's a reduction in the price. And that's why it has to be treated the way it is. Well, it's wiping out the duties that this party is having to pay. And at least in Ad Hoc's formulation of this case— It's a price reduction. But the theory is that when the importer pays it directly, or the foreign exporter pays it directly, it's going to increase the price because it has to pay the anti-dumping duties, right? Which is precisely different from the idea of reimbursement when the duties are being— Right. And there's a separate but related issue here that I want to make sure I connect, which has to do with the duty absorption provision. Because it seems to me that really the undertone of Ad Hoc's focus on just these types of duties is that the exporter here is effectively in some way absorbing the duties for the importer, and that that's problematic because they want the— I'm sorry, not the importer, the U.S. customers. And they want those U.S. customers to pay the full duties. That's precisely covered by the legislative history that we discussed in our— Why is freight treated differently? I don't think this argument has been made, but why is freight treated differently than anti-dumping duties? Because you would think that if the foreign exporter pays the freight, that that would cause it to increase its U.S. price, just as paying the anti-dumping duties would cause it to increase its U.S. price. Why is distinguishing between freight payment and anti-dumping payment? Because these types of payments—freight, customs broker expenses, normal custom duties—are all the normal types of costs that one experiences in shipping merchandise from Europe, say, to the U.S. Whereas—and this report noted this in Wheatland—Congress and Commerce have historically recognized that these types of duties, what are called special dumping duties—and the Court has an extensive analysis of this at 1361 and 1362 of the Wheatland case—are not ordinary costs. They're the trade remedy. They're what's being calculated. And so the idea that the trade remedy duties should be based on the trade remedy duties is totally inappropriate. It would be odd, indeed, as there was some colloquy earlier, it would be odd, indeed, if Commerce, to find this statute, listed United States import duties, made clear that those referred to normal customs duties and that anti-dumping duties were, quote-unquote, special dumping duties, which were a separate thing, but then intended otherwise to include all of that in other cost charges or expenses. And that's why, at the end of the day, Ad Hoc's position is fundamentally irreconcilable with this Court's decision in Wheatland, because if anti-dumping duties are other cost charges or expenses, so are the safeguard duties that this Court ruled do not need to be deducted in Wheatland. And the Court was certainly aware of the full language. I mean, it's very hard to believe that the Court would have come out the way it had in Wheatland if all of these type of special trade remedy duties should be treated as other cost charges or expenses. And the Court noted the legislative history that I was referring to a few moments ago, where in this type of duty absorption situation, even when it's canonically occurring, Congress has said in the legislative history that our duty absorption remedy is not meant to require Commerce to treat anti-dumping duties as a cost. And that's coupled with the fact that the Senate report at the time, because remember, this is all the big 1994 legislation, said that this issue is being resolved by the Court of International Trade at this time, and we expect Commerce to follow the decision of the Court of International Trade. Certainly not a ringing statement that Congress believed that the statute was ambiguous. So if the Court of International Trade had come out the other way, we'd be forced to follow them? No, Your Honor. This Court is not bound by the decisions of the Court of International Trade. At the same time, it's clear that Congress did not think its statute was so unambiguous that it wasn't subject to interpretation by the Court of International Trade at the time. And again, this was a hotly debated issue at the time. One of the administrative determinations underlying that Hugovin decision, the carbon steel pipe from the Netherlands case that's cited throughout the briefs, talked about how this was a really hotly contested issue, this idea whether duty should be treated as a cost. And Congress didn't simply decline to enact that provision. It declined to enact it, turned around, enacted the duty absorption provision, and then explicitly stated that this provision, even when absorption is canonically occurring, should not be taken to treat duty as a cost. And at the same time, the committee said we expect Congress to follow the Court of International Trade's decision. And within a few years, the Court of International Trade had decided several cases that agreed with Congress. This is a decades-long practice that has gone on. And it's been upheld, not just with respect to US import duties, but the broader language of costs, charges, or expenses, by my count, six different decisions of the Court of International Trade, in addition to a very similar decision of this court in Wheatland Tube. And certainly, while this court isn't bound, the court in the past, in cases like International Products and Union Steel, has taken heart in the fact that its decision has been consistent with that of the expert court in these cases. Your bottom line is that the statute's ambiguous on the particular question, and we should give Chevron difference. Yes, Your Honor. Now, you've exhausted Ms. Levenson's time. Is there any new points that you need to raise? No, Your Honor. Oh, I'm sorry. Not from us, Your Honor. Your Honor, may I just take one minute? OK. Thank you, Your Honor. I appreciate that. The point that I want to get right to the point, and that is discussing this issue of reimbursement. I want to make it very clear. First of all, I represent the plaintiffs' appellees, Falcon Marine Exports, and Apex. Now, there is no issue of reimbursement. This court has held that an exporter cannot reimburse itself. And I believe that case was Agri-Dutch versus United States. The exporter's sitting in India. The exporter is also the importer of record. That same exporter is taking on the burden of selling to a US customer. It is increasing its price so that it can account for any potential liability under the anti-dumping law. Now, what plaintiffs are, or what defendants, I guess in this case, are suggesting is that they should be penalized because they are trying to do exactly what the anti-dumping law is intended to do. What it is, the purpose of the anti-dumping law is to raise prices in the United States. And that's what is happening. And they would like, when they are passing along the anti-dumping duty, they are raising the price, they would now like that price to be taken out. And the weight of authority is just overwhelming. I don't think I've ever been involved in a case in which there's so much authority. There's Wheaton, and there's Hooger, and there's a case, you know, there's a legislative history of the Tariff Act of 1921. There's a legislative act of the absorption statute. They all agree, Congress agreed, this court has spoken, the Court of International Trade has spoken, that anti-dumping duties are not to be deducted from US price. Did I use my minute, Your Honor? Thank you. Good enough. Thank you, Mr. Yost. This is the beneficiary of that. We have a full rebuttal time. Thank you very much, Your Honor. Just very briefly, the point was made several times about reimbursement, and I think one of the things that I think was very clear in the colloquy that we heard is that the purpose of the reimbursement regulation is to make sure that the price, we are accurately reflecting whether in fact the price in the United States has been raised to the fair price, and if there's reimbursement going on, then perhaps effectively the price is not accurate, and this situation is the same. And I would refer the court to the preamble in 1997 when the court, when Commerce and its current regulations expanded the reimbursement regulation to cover not only reimburse any dumping duties, but reimburse countervailing duties. And in the notice and comment, in response to some comments saying that that was inappropriate, Commerce says it was appropriate to do so. This is in our brief at page 44. It has the quote. Commerce says the reimbursement is, quote, directly tied to such sales and is no different in substance from any of the other types of price adjustments Commerce makes. And if that's not different, neither is this. On the question of the infinite recursiveness, as Judge Newman pointed out, we are saying it should only be done once. That's what Commerce does in the reimbursement regulation. It only does it once. And we are not asking for anything more than that. If the court thinks that perhaps it's for Commerce to decide in the first instance how it should account for the fact that any dumping duties are included in the price used to calculate export price, the court could always remand to Commerce with instructions to take account of it and let Commerce decide in the first instance how to do it. We think deducting it once makes sense. It gets you to the right number, as our examples show. It is what Commerce does in the reimbursement regulation. But what can't be sustained, in our view, is to say Commerce should just ignore it when, in the case of reimbursement, they do make an adjustment. In this case, which economically is identical to it, they don't make an adjustment. With respect to Wheatland Tube, the holding in Wheatland Tube is that any dumping duties are not United States import duties, nothing more. Why doesn't the statute mention any dumping duties? Because in an original investigation, which is what a lot of the statutes are drafted to address, in an original investigation there's no any dumping order, and so there are no any dumping duties one way or the other. But in the situation of a review, where the order is in place and you're going back to may or may not, depending on the facts of the case, be a cost that's included in the price. In this case, there's no dispute that the any dumping duties are included in the price. And finally, let me just respond to the point that the any dumping duty doesn't exist when it's calculated, when the duty is calculated. Sometimes freight doesn't exist until the administrative review either. Our reply brief at page 10 gives some examples. Okay. Thank you. Thank you all. Thank you.